UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| CATHY REYNOLDS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 7:21cv220 |
| SGT. JOEL CAMP,<br>in his official and individual capacity, | ) |
| Serve:<br>Roanoke City Police Department<br>348 Campbell Ave. SW<br>Roanoke, VA 24016 | ) JURY TRIAL DEMAND |
| and | ) |
| DET. JOHN HALEY,<br>in his official and individual capacity, | ) |
| Serve:<br>Roanoke City Police Department<br>348 Campbell Ave. SW<br>Roanoke, VA 24016 | ) |
| and | ) |
| OFFICER DOES 1-5<br>in their official and individual capacity, | ) |
| Serve:<br>Roanoke City Police Department<br>348 Campbell Ave. SW<br>Roanoke, VA 24016 | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Cathy Reynolds ("Ms. Reynolds," or "Plaintiff"), by counsel, and for her

Complaint against Sergeant Joel Camp ("Sgt. Camp"), Detective John Haley ("Det. Haley") and

Officer Does 1-5 of the Roanoke City Police Department (collectively, "Defendants"), alleges as follows:

## STATEMENT OF THE CASE

1. Ms. Reynolds, a member in good standing of the Virginia State Bar, suffered outrageous, unconstitutional abuse at the hands of the Roanoke City Police Department and, specifically, those individuals identified in this Complaint in retaliation for her representation of her stepson, Darreonta Lamar Reynolds ("D. Reynolds").

2. Ms. Reynolds is a respected attorney, practicing primarily criminal law, who participated in the criminal defense of her stepson, D. Reynolds, when he was charged with murder.

3. Ms. Reynolds was involved with D. Reynolds' case from the beginning, including appearing with her stepson when he voluntarily appeared for questioning at the Roanoke City Police Department only days after the alleged murder. She was known to the police as both D. Reynolds' lawyer and his stepmother.

4. On September 26, 2019, D. Reynolds was acquitted of all charges, thanks to the efforts of his defense team, including Ms. Reynolds.

5. D. Reynolds' acquittal sparked outrage in the Roanoke law enforcement community.

6. Just three days after D. Reynolds' acquittal, Defendants targeted Ms. Reynolds for retaliation. Defendants broke down the front door of Ms. Reynolds' home after she had offered to let them in, "searched" Ms. Reynolds' home for an individual by destroying her personal possessions, including those entirely irrelevant to a search for a person, and left Ms. Reynolds

traumatized, knowing that she could be targeted by police for engaging in constitutionally protected activity.

7. Defendants did all of this, supposedly, to search for a person who was not, and had never been, at Ms. Reynolds' home. Defendants secured the authority to enter Ms. Reynolds' home based on false or fabricated information.

## NATURE OF ACTION

8. This is an action for damages under 42 U.S.C. § 1983 ("Section 1983") stemming from Defendants' retaliation against Ms. Reynolds for engaging in protected speech and for her association with her stepson, an individual who had recently been acquitted for the charge of murder, in violation of the First and Fourteenth Amendments to the United States Constitution.

9. This Section 1983 action seeks additional damages for the unlawful search of Ms. Reynolds' home by Defendants following Defendants' application for a search warrant absent probable cause, and for the unreasonable damage to her home that resulted from the execution of the search warrant, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

10. In addition, Ms. Reynolds brings this action under Section 1983 against the named Defendants for violation of her rights under the Equal Protection clause, as Defendants targeted Ms. Reynolds based on her race, Black.

11. Plaintiff seeks reasonable attorneys' fees under 42 U.S.C. § 1988 ("Section 1988") and other applicable laws.

## PARTIES

12. Ms. Reynolds is a resident of the Commonwealth of Virginia who resides in Roanoke, Virginia.

13. Sgt. Camp, Det. Haley, and Defendants Officer Does 1-5 are, and at all times relevant to this Complaint, were, working for the City of Roanoke as law enforcement officers.

14. At all times relevant to this Complaint, Sgt. Camp, Det. Haley, and Officer Does 1-5 were in uniform and displaying their badge of authority.

15. At all times relevant to this Complaint, Sgt. Camp, Det. Haley and Officer Does 1-5 were acting under color of state law.

16. Officer Does 1-5 are law enforcement officers employed by the City of Roanoke Police Department who participated in the prosecution of D. Reynolds and, following D. Reynolds' acquittal, participated in the unreasonable search of Ms. Reynolds' home.

## JURISDICTION AND VENUE

17. This Court has federal question jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331, because this action asserts a deprivation of one or more federal constitutional rights under Section 1983.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the events described in this action took place within this judicial district.

# FACTS

### *Trial & Acquittal of Darreonta Reynolds*

19. In or around March 2019, officers from the City of Roanoke Police Department arrived at Ms. Reynolds' home to ask that her stepson, D. Reynolds, voluntarily comply with questioning at the police station.

20. Sgt. Camp was among the law enforcement officers who appeared at Ms. Reynolds' home on this occasion.

21. Later, in March 2019, the City of Roanoke indicted D. Reynolds on criminal charges arising from the shooting and death of another individual at a Triangle Mart in Roanoke, Virginia.

22. Ms. Reynolds, an attorney, worked alongside two other attorneys to represent her stepson in his defense against these criminal charges.

23. Ms. Reynolds is Black. The two other attorneys who defended Ms. Reynolds' stepson are white.

24. Det. Haley served as a critical witness for the prosecution of D. Reynolds.

25. Sgt. Camp and other law enforcement officers testified against D. Reynolds during the trial.

26. On September 26, 2019, a jury acquitted D. Reynolds on all charges, having found he acted in self-defense during the incident in question.

27. The City of Roanoke released D. Reynolds from custody on September 26, 2019.

### *Police Contact at Ms. Reynolds' Home Following Her Stepson's Acquittal*

28. On September 29, 2019, three days after D. Reynolds' acquittal and release from custody, Officers from the Roanoke City Police Department made contact with Ms. Reynolds and her family at her home in Roanoke, Virginia.

29. These officers included Sgt. Camp, Det. Haley, and a number of other officers, Officer Does 1-5, whom Ms. Reynolds recognized as having been involved in the questioning and prosecution of her stepson, but whose names she does not recall.

30. These officers informed Ms. Reynolds they believed Ozmeik Clements ("Clements"), an individual for whom an arrest warrant had been issued, to be inside Ms. Reynolds' home.

31. Ms. Reynolds informed the officers she did not know Clements and he could not be found inside of her home.

32. Officers from the Roanoke City Police Department informed Ms. Reynolds they intended to return with a search warrant.

33. Several officers remained outside of Ms. Reynolds' home while other officers left to obtain a search warrant.

34. One officer noted that Ms. Reynolds had made progress on her home renovations since that officer had last been at her home to question her stepson in March 2019.

35. Specifically, the officer noted that Ms. Reynolds had completed the installation of new roofing shingles on her home, a project which had been ongoing and only partially completed in March 2019. The officer stated to Ms. Reynolds, "I see you got your house done."

36. Ms. Reynolds desired the interaction to end and granted the officers who remained posted outside of her home consent to search her home for Clements.

37. Ms. Reynolds specifically informed officers of the Roanoke City Police Department that her front door was unlocked and would remain unlocked should they desire to enter her home to look for Clements.

38. Despite her consent, Defendants chose not to search Ms. Reynolds' home at that time.

39. Defendants returned with a search warrant approximately two hours later.

40. Prior to their return, federal law enforcement agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") set up a staging area in the parking lot of a church across the street from Ms. Reynolds' home.

41. Ms. Reynolds observed Det. Haley speaking and coordinating with the ATF agents present in this staging area.

42. Defendants closed the road on which Ms. Reynolds' home is located and surrounded the perimeter of her home with yellow police caution tape.

43. By the time Defendants returned with a search warrant, approximately two-hundred spectators and news vehicles had gathered in front of Ms. Reynolds' home.

*Defendants Obtained a Warrant to Search Ms. Reynolds' Home*

44. Sgt. Camp obtained a search warrant for Ms. Reynolds' home at 6:01pm on September 29, 2019. The warrant and affidavit in support are attached hereto as Exhibit A.

45. The search warrant obtained by Sgt. Camp authorized the search of Ms. Reynolds' home for "the person of Ozmeik Rae Quan Clements." Ex. A.

46. The search warrant issued in relation to "a person to be arrested for whom a warrant or process for arrest." Ex. A.

47. The probable cause affidavit accompanying the warrant provides as follows:

> On September 29, 2019, your affiant received a call from ATF Special Agent Teehan. SA Teehan advised that around 1400 hours on this date, he received a call from a reliable confidential informant (CI) who has provided reliable information to him on multiple occasions recently. CI advised that they had observed Ozmeik Clements on the front porch of [Ms. Reynold's home address] with Aaron Reynolds and Darreonta Reynolds. CI advised that they have observed Clements at that address on more than one occasion in the past couple days and believe he is residing there. Roanoke Police currently have a Detention Order for Clements for Murder. Officers have had that address under surveillance since 1430 hours and confirm that Aaron and Darreonta Reynolds are there. A search warrant for [Ms. Reynold's home address] and the curtilage is requested to apprehend Ozmeik Clements.

Ex. A.

48. Sgt. Camp indicated he had personal knowledge of the facts set forth in the affidavit and/or that he was advised of the facts set forth in the affidavit, in whole or in part, by one or more other person(s). Ex. A.

49. Sgt. Camp swore to the credibility of the person(s) providing this information to him and/or the reliability of the information provided. Ex. A.

50. Upon information and belief, the affidavit sworn to by Sgt. Camp contains false information.

51. SA Teehan did not receive a tip from a confidential informant providing that Clements had been observed at Ms. Reynolds' home.

52. Clements had not been present at Ms. Reynolds' home during the dates specified in the probable cause affidavit.

53. Sgt. Camp knew that no tip had been received from a confidential informant, but provided this information in his affidavit for the purpose of misleading the magistrate in order to secure a search warrant of Ms. Reynolds' home.

54. Even if Sgt. Camp did receive such a tip from SA Teehan, Sgt. Camp knew the substance of the tip to be false.

55. Sgt. Camp knew that Clements had not been at or near Ms. Reynolds' home on the dates specified in the probable cause affidavit.

56. Sgt. Camp lacked information necessary to establish the credibility of the confidential informant, the veracity of the information provided by the confidential informant, and/or to support the conclusion provided in the affidavit that Clements had been residing – and therefore would be located - in or near Ms. Reynolds' home.

57. The probable cause affidavit sworn to by Sgt. Camp does not provide any reason to believe Clements would be found in or near Ms. Reynold's home on the date for which the search warrant issued, September 29, 2019. Ex. A.

58. The probable cause affidavit does not provide that Clements had been seen in or near Ms. Reynold's home on September 29, 2019. Ex. A.

59. To the contrary, the affidavit provides surveillance of Ms. Reynold's home for during the hours leading up to the issuance of the search warrant confirmed the presence of Aaron and Darreonta Reynolds only. Ex. A.

60. Sgt. Camp purposefully omitted information regarding the credibility of the informant, material to a finding of probable cause, for the purpose of misleading the magistrate in order to secure a search warrant of Ms. Reynolds' home.

61. Sgt. Camp purposefully omitted information regarding the date, time, and number of occasions on which Clements had been observed at Ms. Reynolds' home, material to a finding of probable cause, for the purpose of misleading the magistrate in order to secure a search warrant of Ms. Reynolds' home.

62. Sgt. Camp purposefully omitted information necessary to support the conclusion that Clements had been residing at Ms. Reynolds' home, material to a finding of probable cause, for the purpose of misleading the magistrate in order to secure a search warrant of Ms. Reynolds' home.

63. The presence or absence of Clements in or near Ms. Reynolds' home is material to a finding of probable cause, as the purpose of the search warrant is limited to the apprehension of Clements.

*Unnecessary and Excessively Destructive Search of Ms. Reynolds' Home*

64. Officers from Roanoke City Police Department's Special Weapons and Tactics ("SWAT") team arrived in an armored vehicle and parked in Ms. Reynolds' driveway.

65. Despite both the screen and storm door at the front entrance of Ms. Reynolds' home remaining unlocked, SWAT officers used an entry tool attached to the front of the armored vehicle to puncture the screen door and rip it free from Ms. Reynolds' home in its entirety.

66. In so doing, SWAT officers damaged the screen door beyond repair, heavily damaged the door frame surrounding the front entry, and tore vinyl siding from the exterior of Ms. Reynolds' newly remodeled home.

67. SWAT officers then entered Ms. Reynolds' home by turning the doorknob of the storm door which remained on Ms. Reynolds' home, still unlocked, and pushing the door open in the manner a door is designed to operate.

68. SWAT officers entered Ms. Reynolds' home and proceeded to search it, supposedly for the sole purpose of locating Clements, for approximately 2-3 hours.

69. During their search of Ms. Reynolds' home, SWAT officers opened and searched all of the drawers in Ms. Reynolds' kitchen and detached Ms. Reynolds' appliances from the walls of her home.

70. SWAT officers flipped the mattresses off all of the beds in Ms. Reynolds' home and tore all of the clothes from the closets in the bedrooms.

71. SWAT officers tore the cushions off Ms. Reynolds' furniture and emptied the contents of open soda cans onto the floor.

72. The SWAT officers who conducted the search caused thousands of dollars of damage to Ms. Reynolds' home.

73. The two white attorneys who represented Ms. Reynolds' stepson did not have their homes searched.

74. Ms. Reynolds filed a complaint with the Roanoke City Police Department regarding the damage caused to her home by the SWAT officers.

75. To date, Ms. Reynolds' complaint is still under investigation and she has not been reimbursed for any of the damage caused to her home.

**COUNT I**
**Civil Rights Violation of 42 U.S.C. § 1983: Fourth and Fourteenth Amendments**
**Unreasonable Search and Unreasonably Destructive Search**
*Against All Defendants*

76. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

77. At all material times, Sgt. Camp, Det. Haley, and Officer Does 1-5 were acting under color of state or local law.

78. By their actions, Sgt. Camp, Det. Haley, and Officer Does 1-5 deprived Plaintiff of the established right to be free from unreasonable search and seizure, in violation of Plaintiff's rights under Section 1983 and the Fourth and Fourteenth Amendment to the United States Constitution.

79. Sgt. Camp, Det. Haley, and Officer Does 1-5 caused excessive and unnecessary destruction of property in the course of their search of Ms. Reynolds' home and in violation of her rights under Section 1983 and the Fourth and Fourteenth Amendment to the United States Constitution.

80. Sgt. Camp, Det. Haley, and Officer Does 1-5 lacked probable cause to believe that Clements was present in Ms. Reynolds' home.

81. The probable cause affidavit sworn to by Sgt. Camp contained information Sgt. Camp knew to be false.

82. Sgt. Camp knowingly provided false information in the affidavit for the purpose of securing a search warrant without probable cause.

83. Sgt. Camp knowingly omitted material information from the affidavit for the purpose of misleading the magistrate so as to secure a search warrant for Ms. Reynolds' home without probable cause.

84. The search warrant obtained by Sgt. Camp was not supported by adequate probable cause and should not have issued.

85. Sgt. Camp, Det. Haley, and Officer Does 1-5 exceeded the scope of the search warrant issued for Ms. Reynolds' home and caused excessive and unnecessary damage to her home as a result.

86. Sgt. Camp, Det. Haley, and Officer Does 1-5 used excessive force in executing the search of Ms. Reynolds' home and caused extensive damage to her property.

87. The force used by Sgt. Camp, Det. Haley, and Officer Does 1-5 was not necessary to carry out the purpose of searching Ms. Reynolds' home for Clements.

88. The damage caused by Sgt. Camp, Det. Haley, and Officer Does 1-5 was not plausibly connected to the seizure of Clements.

89. Plaintiff is entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT II
### Civil Rights Violation of 42 U.S.C. § 1983: First and Fourteenth Amendments
### Interference with Free Speech & Association
### *Against All Defendants*

90. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

91. Ms. Reynolds engaged in protected speech when she advocated for the acquittal of the criminal charges against her stepson, D. Reynolds, in Court.

92. Ms. Reynolds' continued association with her stepson is also protected under the First Amendment.

93. Sgt. Camp, Det. Haley, and Officer Does 1-5, acting under the color of state law, retaliated against Ms. Reynold's for her engagement in protected speech and for her association with her stepson when they targeted Ms. Reynold's family and home and subjected Ms. Reynold's to a destructive search of her property absent probable cause.

94. Sgt. Camp, Det. Haley, and Officer Does 1-5, acting under the color of state law, retaliated against Ms. Reynold's for her engagement in protected speech by performing a search of Ms. Reynold's home in an unnecessary and excessively destructive manner.

95. By their actions, Sgt. Camp, Det. Haley, and Officer Does 1-5 deprived Plaintiff of the established right to free speech, in violation of Plaintiff's rights under Section 1983 and the First and Fourteenth Amendments to the United States Constitution.

96. The decision by Sgt. Camp, Det. Haley, and Officer Does 1-5 to search Ms. Reynolds' home was motivated by a desire to retaliate against Ms. Reynolds for her engagement in protected speech and her association with her stepson.

97. The decision by Sgt. Camp, Det. Haley, and Officer Does 1-5 to complete the search of Ms. Reynolds' home in an unnecessary and excessively destructive manner was motivated by a desire to retaliate against Ms. Reynolds for her engagement in protected speech and her association with her stepson.

98. The retaliatory actions of Sgt. Camp, Det. Haley, and Officer Does 1-5 bear an adverse effect on protected speech.

99. Defendants' actions are likely to deter individuals from exercising their First Amendment rights where doing so requires challenging criminal charges brought against themselves or others by law enforcement.

100. Plaintiff is entitled to declaratory and monetary relief, including compensatory damages, punitive damages, attorneys' fees, and costs.

## COUNT III
### Equal Protection Violation of 42 U.S.C. § 1983: Fourteenth Amendment Discrimination Based on Race
*Against All Defendants*

101. The allegations in the foregoing paragraphs are incorporated as if realleged herein.

102. 42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

103. All Defendants are "persons" within the meaning of 42 U.S.C. § 1983.

104. Ms. Reynolds is Black and part of a protected class under the Equal Protection Clause.

105. Under the Equal Protection Clause of the Fourteenth Amendment, discrimination based on race is presumptively unconstitutional and subject to heightened scrutiny.

106. Defendants' decision to conduct an unreasonable and excessively destructive search of Ms. Reynolds' property was motivated by the fact that Ms. Reynolds is Black.

107. Defendants' actions were motivated by racial animus and constituted purposeful discrimination.

108. The white attorneys, who also engaged in protected speech in their defense of Ms. Reynold's stepson, were not subjected to unreasonable and excessively destructive searches of their homes by Defendants.

109. Defendants targeted Ms. Reynolds based on her race, subjecting her to a destructive search of her property to which the similarly-situated white attorneys with whom she worked were not subjected.

110. Defendants' disparate treatment of Ms. Reynolds resulted in severe emotional distress in addition to the damage Defendants' investigation caused to her property and sense of security in her own home.

111. Accordingly, Defendants have violated Ms. Reynold's right to equal protection under the Fourteenth Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff CATHY REYNOLDS requests that this Court enter judgment in her favor, and against Defendants SGT. JOEL CAMP, DET. JOHN HALEY and OFFICER DOES 1-5 on all Counts and further:

(a) Award compensatory damages to Plaintiff Cathy Reynolds, plus past and future pecuniary damages on each of the above-stated Counts in an amount that can only be determined through discovery;

(b) Award Plaintiff Cathy Reynolds punitive damages as to each of her respective Counts in amounts to be determined at trial;

(c) Award attorney's fees, costs, and expenses incurred by Plaintiff Cathy Reynolds in this action pursuant to statute; and

(d) For any further relief this Court deems just and appropriate under the circumstances.

## JURY DEMAND

**PLAINTIFF CATHY REYNOLDS DEMANDS A TRIAL BY JURY.**

Dated:        April 19, 2021              Respectfully,

                                          /s/
                                          Joshua Erlich, VA Bar No. 81298
                                          Davia Craumer, VA Bar No. 87426
                                          Katherine L. Herrmann, VA Bar No. 83203

THE ERLICH LAW OFFICE, PLLC
2111 Wilson Blvd., Ste. 700
Arlington, VA 22201
Tel: (703) 791-9087
Fax: (703) 722-8114
Email: jerlich@erlichlawoffice.com
dcraumer@erlichlawoffice.com
kherrmann@erlichlawoffice.com